**In re Anonymous No. 34 D.B. 91**

Disciplinary Docket No. 34 D.B. 91.

SLOANE, *Member,* June 3, 1992—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

On November 30, 1990, the Supreme Court of Pennsylvania issued an order transferring respondent to inactive status pursuant to Rule 219, Pa.R.D.E.

On March 15, 1991, the Office of Disciplinary Counsel filed a petition for discipline against respondent, docketed at No. 34 D.B. 91.

Respondent did not file an answer to the petition for discipline.

The matter was referred to Hearing Committee [    ], which was chaired by [    ], Esquire, and included [    ], Esquire and [    ], Esquire.

The committee held a hearing on the matter on June 26, 1991.

On July 22, 1991, Hearing Committee [    ] filed its report and recommended that respondent be disbarred from the practice of law.

The matter was adjudicated at the September 27, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

We adopt the findings of fact contained within the Hearing Committee report.

(1) Respondent is an attorney formerly admitted to practice law in the Commonwealth of Pennsylvania, having been admitted in or about 1978. Respondent formerly maintained an office at [    ]. Respondent was born in 1953.

(2) By order dated November 30, 1990, the Supreme Court of Pennsylvania ordered that respondent be transferred to inactive status pursuant to Rule 219, Pa.R.D.E.

(3) Pursuant to the power granted by Pa.R.D.E. 207, the Office of Disciplinary Counsel, by [    ], Esquire, senior disciplinary counsel and [    ], Esquire, acting chief disciplinary counsel filed a petition for discipline against respondent for professional misconduct and violation of the Disciplinary Rules of the Code of Professional Responsibility and the Rules of Professional Conduct.

## CHARGE I—THE [A] MATTER

(4) On or about December 22, 1986, [    ] and [    ] [A] were involved in an automobile accident.

(5) Shortly thereafter, they hired the respondent for legal representation with reference to the accident, and respondent filed a civil complaint on their behalf in the Court of Common Pleas of [    ] County on March 17, 1988.

(6) In November 1989, the case was settled for $24,000 and an insurance settlement check for that amount was deposited into respondent's law firm's bank account on January 3, 1990.

(7) Thereupon, on January 3, 1990, respondent caused to be issued a check on his law firm's account in the amount of $13,811.04, payable to [    ] and [    ] [A], representing their share of the insurance settlement proceeds.

(8) However, respondent did not deliver said check to the [A's]. Instead, respondent forged, or caused to be forged, the signature of both [A's] on the reverse side of the check, and respondent deposited said check into his personal escrow account at the [B] Bank, Account No. [    ].

(9) By March 22, 1990, respondent's escrow account balance had been reduced to $2,645.50, and at that time

respondent had misappropriated the funds due the [A's] without their knowledge, consent or permission.

## CHARGE II—THE [C] MATTER

(10) On or about May 26, 1986, [C] was involved in an automobile accident, and he thereafter hired respondent for legal representation.

(11) In or about August 1987, the automobile accident case was settled for the amount of $47,500.

(12) At about the time of settlement, respondent forged, or caused to be forged, the signature of [C] on both the release and on the insurance settlement check.

(13) On August 28, 1987, respondent deposited the insurance settlement check, with the forged endorsement of [C], into his "attorney-at-law office account" in the [B] Bank, Account No. [    ].

(14) Thereafter, respondent issued various checks, none of which were for the benefit of [C], and by September 18, 1987, respondent's bank account balance had fallen to approximately $63. By that date, respondent had misappropriated the funds due [C] for his own uses and purposes, without the knowledge, consent or permission of [C].

(15) In addition to respondent's forgeries and misappropriation, he further engaged in a misrepresentation when he informed [C] that his case was proceeding in litigation, when in fact litigation had never been initiated.

## CHARGE III—THE [D] MATTER

(16) On November 5, 1986, [D] was injured in an automobile accident, and he thereafter hired respondent for legal representation.

(17) In October 1987, the case was settled for the sum of $30,000.

(18) At or about the time of settlement, respondent forged, or caused to be forged, [D's] signature on both the release and on the insurance settlement check.

(19) On November 4, 1987, the insurance settlement check in the aforesaid amount, with the forged endorsement of [D], was deposited into respondent's "attorney-at-law account" in the [B] Bank, Account No. [   ].

(20) Thereafter, respondent issued various checks on said account, none of which were for the benefit of [D], and by November 18, 1987, the balance in respondent's account had been reduced to approximately $600. At that time, respondent had misappropriated the funds due [D] for respondent's own uses and purposes without the knowledge, consent or permission of [D].

(21) In addition to respondent's forgeries and misappropriation, he further engaged a misrepresentation when he informed [D's] wife in December 1989, that the case was in litigation and would be tried in March 1990. In fact, litigation was never filed by respondent on behalf of [D].

## CHARGE IV—THE [E] MATTER

(22) In August 1985, [E] was involved in an automobile accident, and she thereafter hired respondent for legal representation.

(23) In March 1987, the case was settled for the sum of $30,000.

(24) At or about the time of settlement, respondent forged, or caused to be forged, [E's] signature on both the release and on the insurance settlement check.

(25) On March 27, 1987, respondent deposited the aforesaid insurance settlement check, with the forged endorsement, into his "attorney-at-law office account" in the [B] Bank, Account No. [   ].

(26) Thereafter, respondent issued various checks, none of which were for the benefit of [E], and by April 30, 1987, the balance in the account had been reduced to $2,000. At that time respondent had misappropriated the funds due [E] for respondent's own uses and purposes without the knowledge, consent or permission of [E].

(27) The petition for discipline alleged that the afore-mentioned conduct violated the following Disciplinary and Professional Conduct Rules:

A. D.R. 1-102(A)(3)—A lawyer shall not engage in illegal conduct involving moral turpitude;

B. D.R. 1-102(A)(4)—A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

C. D.R. 7-101(A)(3)—A lawyer shall not intentionally prejudice or damage a client during the course of the professional relationship;

D. D.R. 9-102(A)—All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to a lawyer or law firm shall be deposited therein;

E. D.R. 9-102(B)(1)—A lawyer shall promptly notify a client of the receipt of funds, securities or other properties;

F. D.R. 9-102(B)(2)—A lawyer shall identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable;

G. D.R. 9-102(B)(3)—A lawyer shall maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them;

H. D.R. 9-102(B)(4)—A lawyer shall promptly pay or deliver to the client as requested by a client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive;

I. RPC 1.15(a)—A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property;

J. RPC 1.15(b)—Upon receipt of funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. A lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and shall promptly render a full accounting upon request;

K. RPC 1.15(c)—When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interest, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests;

L. RPC 8.4(a)—It is professional misconduct for a lawyer to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

M. RPC 8.4(b)—It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

N. RPC 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation; and

O. RPC 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

## CONCLUSIONS OF LAW

Respondent has violated all of the Disciplinary and Professional Conduct Rules as charged by misappropriating client funds and forging client signatures.

## DISCUSSION

There are two issues instantly before the Disciplinary Board. First and foremost is the question of whether respondent has engaged in professional misconduct, as alleged in the petition for discipline. The second query is what type of discipline to impose in light of our findings regarding respondent's conduct.

It is incumbent upon the Office of Disciplinary Counsel to prove that respondent committed the alleged unprofessional transgressions. Petitioner may prove professional misconduct by a preponderance of evidence which clearly and satisfactorily demonstrates the charged violations. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986).

Occasionally, there is a case such as the present one, when the alleged misconduct is so blatant that the facts immediately establish the need for disciplinary action. The petition for discipline charged that in the [A], [C], [D] and [E] matters, respondent, without the knowledge or consent of the clients he had agreed to represent, misappropriated settlement proceeds and used them for his own benefit and also forged client signatures on settlements.

The aggrieved parties in all four cases appeared before Hearing Committee [    ] on June 26, 1991, and testified that respondent had in fact made unauthorized uses of their settlement funds for his own benefit and affixed their signatures to legal documents without their knowledge or consent. Respondent's former law partner, [F],

Esquire, also testified that he was aware of "about 15" cases in which respondent had "borrowed" from clients' monies, and around eight cases in which respondent never returned the misappropriated funds. (N.T. 14).

Additionally, Investigator [    ] of the Office of Disciplinary Counsel testified that he had been unable to locate respondent for service of the petition for discipline. (Service was in fact made via mail, in accordance with Disciplinary Board policy.) Investigator [    ] told the Hearing Committee that respondent's whereabouts were unknown, and that he is also the subject of investigation by the [    ] County District Attorney's Office and the Federal Bureau of Investigation.

The uncontroverted testimony of respondent's former clients, former law partner, and the investigator from the Office of Disciplinary Counsel all constitute clear and satisfactory evidence respondent has acted unprofessionally as alleged. The gravamen of the complaint against respondent charges a disregard of the sacred fiduciary relationship, which was violated when respondent misappropriated client funds he had obtained through forgery. The pilfering of client money is an extremely serious offense which jeopardizes the integrity of the bar and undermines the attorney-client relationship. Indeed, the conversion of client funds is a very serious offense, which requires disciplinary sanction. See *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983). Like Lucarini, respondent also engaged in the practice of affixing his clients' signatures to settlement forms without their knowledge or consent. We note that forgery is also an extremely serious offense necessitating reprimand.

The appropriate disciplinary sanction will protect the interests of the public and maintain the integrity of the bar. *Office of Disciplinary Counsel v. Stern,* 515 Pa.

68, 526 A.2d 1180 (1987). In the instant matter, we must protect the public, and the bar, from a formerly practicing attorney who has engaged in forgery, converted client funds, and fled the justice system. We have no choice but to recommend that the inactive status to which respondent was transferred in 1990 become permanent through disbarment. The type of misconduct engaged in by respondent is undoubtedly grounds for disbarment in Pennsylvania, and is the only remedy which will adequately recognize the egregious nature of respondent's actions. See *Stern,* Rule 204 Pa.R.D.E.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent [    ] be disbarred from the practice of law.

It is further recommended that the court direct that respondent pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Schiller and Paris and Ms. Flaherty did not participate in the adjudication.

## ORDER

And now, June 3, 1992, upon consideration of the report and recommendations of the Disciplinary Board dated December 26, 1991, it is hereby ordered that [respondent] be and he is disbarred from the bar of this Commonwealth and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.